TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00246-CR







Jose Leon Zamora, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 93-646-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of murder and assessed punishment at imprisonment
for ninety-nine years. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex. Gen.
Laws 883, 913, amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973
Tex. Gen. Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02, since amended). In two points of
error, appellant complains of the admission in evidence of his written statement to the police and
of an autopsy photograph.

 A party was held at a duplex apartment in Round Rock on the night of August 14
and 15, 1993. Among those present were two brothers, Martin and Felix Perez, and appellant. 
At about 2:30 a.m., while they and others stood outside the duplex, appellant threw a beer bottle
at Martin Perez's feet, causing it to shatter. Martin and appellant exchanged words about this,
but were separated by Felix. Appellant then went inside the duplex and got a knife from the
kitchen. Overcoming the efforts of a friend to restrain him, appellant returned to the front yard,
approached Felix Perez, and swung at him with the knife. The State's theory of the offense,
which is supported by the evidence, was that appellant stabbed Felix Perez in the left chest at this
time.

 Perez told witnesses that he had been stabbed by appellant. These witnesses saw
blood on Perez's shirt. Perez then got a small wooden bat from a friend and attempted to strike
appellant with it, but the blow was deflected by another person. It was appellant's defensive
theory that he stabbed Perez at this time, either in self-defense, recklessly, or under the influence
of sudden passion. 

 Appellant went inside the duplex after the stabbing. A witness overheard appellant
being asked, "Why did you stab him. You didn't have no reason to stab him." Appellant told
another witness that before stabbing Perez, he said, "I've got a present for you." Appellant
ignored requests that he leave the duplex, changed shirts, and eventually went to sleep. 
Meanwhile, Perez was taken to a hospital, where he died. The autopsy disclosed a single stab
wound to the chest that penetrated the left side of the heart. The cause of death was internal
bleeding.

 Police officers were dispatched to the scene after the stabbing was reported. By
the time they arrived, everyone at the party had gone inside the duplex. The lights were off, but
people could be seen within the apartment. The police knew that the duplex had been the scene
of gang activity in the past and were concerned about the possibility of further violence. Senior
Sergeant Dan Lemay, who was in command of the police at the scene, testified:



 I had two concerns. My first concern was for the officers' safety. I felt
like it would be very dangerous for officers to approach that house. We had every
reason to believe that the suspect of the homicide was in the house; that it was
gang-affiliated; that there had been a lot of violent activity in that house in the past. 
I also was concerned about the people who were in that house. I did not know who
all was there, how many people were there. There was a concern about juveniles,
people who could be injured by the suspect in this offense.



The tactical squad was called and, after a concussion grenade was set off, the duplex was forcibly
entered. Fourteen people, including appellant, were found inside and taken to police headquarters
for questioning.

 By 9:30 that morning, appellant had been identified by several witnesses as the
person who stabbed Felix Perez. Appellant, who had been waiting in a hallway to be questioned,
was then advised of his rights and agreed to give a written statement. This statement, which
appellant wrote himself, reads as follows:


 What happen last night. I started to drink in the morning. [T]he day went
by then at night I got dress up and went out. Afterwards me and friend GG went
home. [H]e stop at this house. [T]hen some guys got there. [S]ome guy started
acting big with me and I told him to leave me alone. [T]hen he went to the truck
and got a baseball bat. I got scared. I got a knife to defend myself and everybody
started holding me. [T]he guy almost hit with the bat. I got away and I hided,
stay away. I stabbed him in the left shoulder. I don't know what I did with the
knife.



Appellant was formally arrested after giving this statement.

 In his first point of error, appellant contends that he was unlawfully arrested at the
duplex, that his statement to the police was the product of this unlawful arrest, and that the
admission of the statement in evidence violated his Fourth Amendment rights. U.S. Const. amend
IV. The State responds that appellant was not arrested at the duplex, but merely detained for
questioning, and that this detention was reasonable under the circumstances. The State further
asserts that if appellant's seizure at the duplex was unlawful, the illegality had been so attenuated
as to render his written statement untainted and hence admissible. Finally, the State contends that
any error in the admission of the statement was harmless beyond a reasonable doubt. Because we
agree with the latter contention, we will assume for the sake of this opinion that appellant's
statement to the police was tainted by an unlawful arrest.

 When applying the harmless error rule, a reviewing court should not focus on the
propriety of the outcome of the trial. Instead, it should be concerned with the integrity of the
process leading to the conviction. Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). 
Among the factors to be considered are: the source of the error; the nature of the error; whether
and to what extent the error was emphasized by the State; the collateral implications of the error;
how much weight a juror would probably place upon the error; and whether declaring the error
harmless would encourage the State to repeat it with impunity. Id.

 The issue in this cause was not whether appellant stabbed Felix Perez but the
circumstances under which he did so. Numerous prosecution witnesses described appellant's
actions and remarks on the night in question as detailed above. In addition, the State offered in
evidence a letter written by appellant after his arrest to his friend Israel Urbina, who was present
at the party and witnessed the stabbing. In this letter, appellant wrote:


I need a big favor of you Bro. I wanted to know if you can talk to my lawyer
about what you saw that night Bro. He says all those witnesses are saying that it
was all my fault and that he didn't come at me with a bat. . . . All I need is one
witness saying that he did come at me with a bat. . . . [E]verybody says they
didn't see anything but I know you saw that dude come at me with a bat after they
stop us from fighting. . . . Remember he was behind me like he was getting ready
to do something to me. I really need your help Bro. . . . You scratch my back
Bro! I'll scratch your back.



The prosecutor referred to the letter in both his opening statement and in his closing argument at
the guilt stage. He did not mention appellant's statement to the police on either occasion.

 Appellant did not deny stabbing Felix Perez. Instead, appellant's defensive strategy
was aimed at convincing the jury, or at least raising a reasonable doubt, that the stabbing took
place when Perez attacked appellant with the bat. Appellant's statement to the police was
consistent with his claim that the stabbing was an act of self-defense or, at most, manslaughter. 
In fact, defense counsel cited the statement as evidence supporting the defense position during his
closing argument.

 Because everything appellant said about the stabbing in his statement to the police
was repeated in appellant's letter to Urbina, the admission of the statement added nothing to the
State's case. Reflecting this, the prosecutor ignored the statement during his jury argument,
choosing instead to focus on the letter. The jury obviously gave the statement little weight, since
it rejected the claim of self-defense asserted in the statement. We are satisfied beyond a
reasonable doubt that the admission of appellant's written statement did not contribute to the
conviction or punishment. Tex. R. App. P. 81(b)(2). Given the unusual circumstances of this
cause, it is unlikely that declaring the error harmless will encourage the State to repeat it with
impunity. Point of error one is overruled.

 Two autopsy photographs, in the form of color slides, were admitted in evidence. 
One showed the single stab wound to the victim's chest. The other depicted the victim's heart
after it was removed from the body during autopsy and was used to demonstrate how the knife
penetrated the heart. Appellant argues that the photograph of the heart had little or no relevance
because the cause of death was undisputed, and that whatever relevance the exhibit had was
outweighed by the danger of unfair prejudice arising from the photograph's gruesome nature. 
Tex. R. Crim. Evid. 403.

 Rule 403 favors the admission of relevant evidence and presumes that relevant
evidence will be more probative than prejudicial. Green v. State, 840 S.W.2d 394, 410 (Tex.
Crim. App. 1993). While the cause of death was not at issue in this case, the manner in which
the fatal wound was inflicted was very much at issue. Using the photograph of the victim's heart,
the medical examiner demonstrated that the knife penetrated the organ from the top. She further
testified that to inflict the wound, appellant must have held the knife over his head and stabbed
downward. According to the pathologist, the injury could not have been caused by appellant
holding the knife in front of him as if to ward off an attack by the victim. The district court did
not abuse its discretion by determining that the challenged photograph was relevant to rebut
appellant's claim that he stabbed Perez in self-defense.

 Photographs are generally admissible when verbal testimony about the same matter
is admissible. Emery v. State, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994). Among the factors
to consider in determining whether the probative value of photographic evidence is substantially
outweighed by the danger of unfair prejudice are: the number and size of the exhibits, whether
they are black-and-white or in color, whether there are other means of proof, and other
circumstances unique to each case. Green, 840 S.W.2d at 410. Two autopsy photographs were
admitted and only one is challenged on appeal. The slide was in color and, while the size of the
projected image is not in the record, we assume that it was large. There was no way to visually
demonstrate the size and location of the puncture wound to the heart except with a photograph. 
Under the circumstances, the district court did not abuse its discretion by overruling appellant's
rule 403 objection. See Harris v. State, 661 S.W.2d 106 (Tex. Crim. App. 1983) (no abuse of
discretion to admit color photograph of child's skull after skin had been reflected during autopsy). 
Point of error two is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 30, 1995

Do Not Publish